FILED

December 1 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0216

DA 15-0216

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2015 MT 334N

IN THE MATTER OF:

K.A.P.,

      A Youth in Need of Care.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DN 14-01
Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Jennifer A. Giuttari, Law Office of Jennifer A. Giuttari, PLLP,
Missoula, Montana (for Mother)

            Casey Emerson, Attorney at Law, Polson, Montana (for Youth)

      For Appellee:

            Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

            Steven N. Eschenbacher, Lake County Attorney, Polson, Montana
(for DPHHS and Appellee)

Submitted on Briefs:  November 18, 2015
Decided:  December 1, 2015

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Appellant T.N. (Mother) appeals the Twentieth Judicial District Court's March 6, 2015 Order terminating her parental rights to her minor child (K.A.P.) after concluding that Mother had abandoned the child. Mother argues that the District Court could not terminate her rights lawfully without taking evidence to support its finding of abandonment. We affirm because Mother failed to preserve the issue for appeal.

¶3 The Department of Public Health and Human Services (Department) removed K.A.P. from his parents' care in January 2014 and petitioned for emergency protective services, temporary legal custody, and adjudication of K.A.P. as a youth in need of care. The petition arose from an incident in the presence of seven-month-old K.A.P. in which his father—who since has relinquished his parental rights—physically assaulted Mother, requiring her emergency medical treatment. A Child Protective Services worker initially placed K.A.P. with Mother at a safe house for domestic violence victims. The family was homeless and had a history of domestic violence; the father also had ongoing chemical dependency issues. K.A.P. later was placed with his paternal grandmother.

¶4 Mother appeared with counsel on April 3, 2014, for the initial show cause hearing. Mother made no other court appearances throughout the remainder of the case, and her

appointed counsel lost contact with her. At the time set for the adjudication hearing on June 26, 2014, the District Court entered Mother's default in the case. The court thereafter approved a treatment plan and issued an order adjudicating K.A.P. as a youth in need of care and granting the Department temporary legal custody.

¶5 On December 19, 2014, the Department petitioned for termination of Mother's parental rights, alleging that she had left K.A.P. under circumstances that made reasonable the belief that Mother did not intend to resume care of him and had abandoned the child within the meaning of §§ 41-3-102(1)(a)(i) and -609(1)(b), MCA. Mother was served by publication, and the court convened a termination hearing on February 19, 2015.

¶6 Mother did not appear at the termination hearing, but her counsel was present and advised the District Court that they recently had re-established contact and that she had expected Mother to be present in court that day. Counsel indicated that Mother may wish to relinquish her parental rights, and requested the court to postpone the hearing to give the parties a chance to pursue the relinquishment process. When the court advised the parties that it was going to proceed with terminating Mother's rights, Mother's counsel protested because she had just received discovery responses from the State that morning. She also told the court that Mother had not been aware of the service by publication and that they only recently made contact. The court responded,

> She is not here. She has had notice. She has had an attorney. She has had publication. She has had contact whether it's very recent or not. That, and she's failed to appear.

3

Mother's counsel stated her objection for the record, and added that she had just received a brief that morning from the youth's attorney.

¶7 Based on the Mother's previously-entered default, her failure to appear at any court proceedings since the initial show cause hearing, her failure to involve herself with the child, and K.A.P.'s need for stability and finality, the District Court granted the Department's petition for termination. The court entered written findings of fact, conclusions of law, and an order terminating Mother's parental rights on March 6, 2015. Consistent with its findings in open court, the court determined that Mother had abandoned the child, that her conduct or condition was unlikely to change given "her lack of participation in this case from the beginning," and that termination was in K.A.P.'s best interest.

¶8 Mother argues on appeal that a parent's rights cannot be terminated without clear and convincing evidence that the statutory standards for a finding of abandonment have been met. Section 41-3-609(1)(b), MCA. She contends that there was nothing in the record that could have supported a termination order except for the Department's petition, and that the petition alone was not evidence and not sufficient to support the court's finding.

¶9 "To properly preserve an issue for appeal, a party must notify the court at the time the objectionable conduct is at issue." *In re A.T.*, 2006 MT 35, ¶ 15, 331 Mont. 155, 130 P.3d 1249. "Failure to make a timely objection constitutes a waiver of the party's right to appeal." *A.T.*, ¶ 15. Although Mother's counsel objected to proceeding with the termination hearing because her client was considering a relinquishment of rights and

4

because she had just received discovery from the State and a brief from the child's attorney, Mother did not advise the District Court of her position that it could not order termination of her rights without taking evidence at the hearing. She did not raise the issue until her brief on appeal.

¶10 It bears repeating that "we will not fault a district court for failing to address statutory deficiencies that are not brought to its attention during the proceedings because doing so would encourage litigants to withhold objections rather than raise the issues appropriately in the district court." *In re A.S.*, 2006 MT 281, ¶ 35, 334 Mont. 280, 146 P.3d 778 (quoting *In re A.N.W.*, 2006 MT 42, ¶ 41, 331 Mont. 208, 130 P.3d 619). Had Mother brought to the trial court's attention the statutory argument she makes now, the court could have directed the State to put on its evidence in support of termination. We will not put the District Court in error now for its failure to do so when no party objected at the time.

¶11 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. Mother having failed to preserve for review the lone issue she presents on appeal, there is no other basis for this Court to determine that the District Court abused its discretion in terminating her parental rights. The Judgment is affirmed.

/S/ BETH BAKER

5

We concur:

/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA
/S/ PATRICIA COTTER
/S/ JIM RICE